UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case Nos.: 21-cr-00004 (CKK) |
| v. : | 21-cr-00614 (CKK) |
| : | |
| LONNIE LEROY COFFMAN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully recommends that the defendant be sentenced at the mid-point of the agreed-upon Sentencing Guidelines range for each of the three criminal charges, which should be served concurrent to each other, to be followed by a three-year term of supervised release.

**PROCEDURAL BACKGROUND**

On January 7, 2021, defendant Lonnie Leroy Coffman was charged by criminal complaint in the United States District Court for the District of Columbia with Possession of an Unregistered Firearm – Destructive Device (in violation of 26 U.S.C. § 5861(d)) and Carrying a Pistol Without a License (in violation of 22 D.C. Code § 4504(a)). (Dkt No. 1, Case No. 21-cr-4.) The charges in the criminal complaint arose from conduct that occurred the day before, on January 6, 2021. (Dkt No. 1-1, Case No. 21-cr-4.)

On January 11, 2021, the grand jury for the United States District Court for the District of Columbia returned a 17-count indictment charging the defendant with Possession of an Unregistered Firearm – Destructive Device (26 U.S.C. § 5861(d)), three counts of Carrying a Pistol Without a License (22 D.C. Code § 4504(a)), two counts of Carrying a Rifle or Shotgun (22 D.C. Code § 4504(a-1)), Possession of a Large Capacity Feeding Device (7 D.C. Code § 2506.01(b)),

five counts of Possession of an Unregistered Firearm (7 D.C. Code § 2502.01(a)), and five counts of Unlawful Possession of Ammunition (7 D.C. Code § 2506.01(a)(3)).  (Dkt No. 5, Case No. 21-cr-4.)

On October 4, 2021, the defendant was charged by information in the United States District Court for the Northern District of Alabama with one count of Possession of an Unregistered Firearm – Destructive Device (26 U.S.C. § 5861(d)).  (Dkt No. 1-1, Case No. 21-cr-614.)  The criminal charge in the Northern District of Alabama arose from conduct that occurred between January 1 and January 6, 2021.  (Dkt No. 1-1, Case No. 21-cr-614.)  With the consent of the parties, on or around October 7, 2021, the prosecution was transferred under Federal Rule of Criminal Procedure 20 to this Court and assigned Case Number 1:21-cr-614 (CKK).  (Dkt No. 1, Case No. 21-cr-614.)

On November 12, 2021, the defendant entered guilty pleas pursuant to plea agreements in both cases.  In Case Number 1:21-cr-4, the defendant pleaded guilty to counts one and two of the indictment, charging him with Possession of an Unregistered Firearm – Destructive Device (26 U.S.C. § 5861(d)) and Carrying a Pistol Without a License (22 D.C. Code § 4504(a)).  (Dkt No. 22, Case No. 1:21-cr-0004.)  In Case Number 1:21-cr-614, the defendant pleaded guilty to count one of the information, Possession of an Unregistered Firearm – Destructive Device (26 U.S.C. § 5861(d).  (Dkt No. 3, Case No. 21-cr-614.)  The United States agreed to dismiss the remaining charges at the time of sentencing.

The sentencing hearing in both cases is scheduled for April 1, 2022.

**FACTUAL BACKGROUND**

At the plea hearing, the defendant admitted that on the morning of January 6, 2021, he parked his pickup truck in the 300 block of First Street, in Southeast, Washington, D.C., and walked in the direction of the U.S. Capitol Building and towards a political rally planned for that morning near the National Mall.  (Statement of Offense at 1-2, Case No. 21-cr-4, attached as Exhibit A.)  That same day, a joint session of the United States Congress was scheduled to convene at the United States Capitol to count the votes of the Electoral College of the 2020 Presidential Election.  (*Id*. at 1.)

The defendant had driven the pickup truck from his home state of Alabama several days earlier, and the pickup truck contained loaded firearms within arms-reach of the driver's seat, including a 9mm handgun, a rifle, and a shotgun.  (*Id*. at 1-2.)  Also inside the pickup truck and in its covered bed were hundreds of rounds of ammunition, large-capacity ammunition feeding devices, a crossbow with bolts, machetes, camouflage smoke devices, a stun gun, cloth rags, lighters, a cooler containing eleven mason jars with holes punched in the lids, and other items.  (*Id*. at 2.)  The eleven mason jars each contained a mixture of gasoline and Styrofoam.  (*Id*.)  The mason jars and their contents, along with the lighters and cloth rags, made up the component parts of bottle-based improvised incendiary weapons called Molotov cocktails.  (*Id*.)  These items constituted a combination of parts designed or intended for use in converting any device into a "destructive device" as that term is defined in 26 U.S.C. Section 5845(f).  (*Id*.)  The defendant knowingly possessed these items, and he had not registered any firearms or destructive devices in the National Firearms Registration and Transfer Record.  (*Id*. at 2-3.)  (*See* Photos of weapons found in pickup truck, attached as Exhibit B.)

When the defendant left his pickup truck on the morning of January 6, he carried two additional loaded firearms on his person: a 9mm handgun and a .22 caliber revolver. (Exhibit A at 2.) The defendant carried these firearms as he walked in Washington, D.C., that morning and throughout the day. He had not sought or obtained a license to carry a pistol in the District of Columbia. (*Id*. at 3.) (*See* Photos of weapons recovered from defendant's person, attached as Exhibit C.)

At the plea hearing, the defendant also admitted that he had made 12 additional Molotov cocktail component parts at his residence in Alabama, at some point prior to his departure for the Washington, D.C., area (he departed from his home in Alabama on or about January 1, 2021). (Statement of Offense at 2, Case No. 21-cr-614, attached as Exhibit D.) Like the mason jars in the defendant's pickup truck, the 12 mason jars at his residence in Alabama each had a hole punched in the lid and contained gasoline; several also contained Styrofoam. (Exhibit D at 2.) The defendant admitted that he knowingly possessed these items in Alabama on or about January 1, 2021, and that he had not registered any firearms or destructive devices in the National Firearms Registration and Transfer Record. (*Id*.)

The Court made additional factual findings in its May 24, 2021, memorandum opinion in Case Number 1:21-cr-4 denying the defendant's motion for reconsideration of pretrial detention (Dkt No. 19, Case No. 1:21-cr-4).[1] These included that the defendant transported the large number of weapons over a significant distance, all the way from Alabama to the District of Columbia, and that he parked the weapons-filled pickup truck in "an area proximate to personal residences and

---

[1] The Court's memorandum opinion cited to the Affidavit in Support of Criminal Complaint (Dkt No. 1-1) and the government's memorandum in opposition (Dkt No. 16, under seal), both of which we incorporate here by reference.

numerous government buildings, including the United States Capitol." (*Id*. at 12.)[2]  A government explosives enforcement officer determined that the combination of melted Styrofoam and gasoline in a Molotov cocktail has the "effect of napalm insofar as it causes the flammable liquid to better stick to objects that it hits . . .". (*Id*. at 3-4).

In addition to the weapons and ammunition, law enforcement recovered handwritten notes from the defendant's pickup truck, including a quote attributed to Abraham Lincoln stating, "We The People Are The Rightful Masters Of Both The Congress And The Courts, Not To Overthrow The Constitution But To Overthrow The Men Who Pervert The Constitution." (Dkt No. 19 at 4, Case No. 1:21-cr-4; photos attached as Exhibit E.)  The handwritten notes also included a listing of individuals, some identified as "good guys" and "bad guys," with a federal judge listed among the latter. (*Id*.)

Handwritten notes in the defendant's wallet on January 6 included contact information for an individual identified by law enforcement as a member of a Southeast, Texas, militia group known as the "American Patriots." (Dkt No. 19 at 5, Case No. 1:21-cr-4).  The handwritten notes also included an address for a reported gathering place in Texas called "Camp Lonestar," where militia groups had reportedly sought to patrol the border looking for illegal aliens. (*Id*., citing to law enforcement report attached to Dkt No. 16 as Exhibit E.)  Law enforcement had previously identified the defendant as a participant at Camp Lonestar, where he was armed with a shotgun and a 9mm pistol. (*Id*., citing to law enforcement report attached to Dkt No. 16 as Exhibit G.) Additional militia-related documents were located by law enforcement at the defendant's residence

---

[2] Law enforcement's attention was initially drawn to the pickup truck during an investigative sweep of the block searching for explosives, after law enforcement received reports of possible explosive devices in the vicinity of the National Republican Club and the Democratic National Committee Headquarters. (Dkt No. 19 at 2, Case No. 1:21-cr-4.)  We are not aware of any evidence that the defendant was involved in the delivery of any explosive devices to those locations.

in Alabama, as well as another handwritten list of public figures with a heading that read, "Use White Pages to Locate People." (*Id*. at 6-7; photos attached as Exhibit F.) The list identified various public figures with descriptions next to their names, including "ex Dem. Senator, traitor," "Billionaire left[i]st, traitor," "radical Dem. Senator," "billionaire oilman & fund-raiser for Obama," and others. (*Id*.)[3]

Finally, the defendant had travelled to Washington, D.C., the month prior to his arrest, and on December 11, 2020, he attempted to drive to the residence of a United States Senator, and also called the Senator's office in an effort to "help with the election fraud he saw." (Dkt. No. 19 at 6, Case No. 1:21-cr-4).[4] A staff member at the Senator's office recorded that the defendant seemed "unbalanced" or "not 100% there" during the call, but did not seem threatening. (*Id*.)[5]

## ARGUMENT

The United States respectfully recommends that the defendant be sentenced to a period of imprisonment at the mid-point of the agreed-upon Sentencing Guidelines range for each of the

---

[3] In addition to the Molotov cocktail component parts located at the defendant's residence in Alabama, law enforcement also found two rifles and ammunition. (Dkt No. 19 at 6, Case No. 1:21-cr-4.)

[4] December 11, 2020, was also the date of a political rally regarding the 2020 election in downtown Washington, D.C., that involved violence and numerous arrests, but we are aware of no evidence of the defendant's involvement in the rally or in any illegal activity connected to it. *See* https://www.washingtonpost.com/local/trump-dc-rally-maga/2020/12/11/8b5af818-3bdb-11eb-bc68-96af0daae728_story.html.

[5] There is no evidence that the defendant entered the U.S. Capitol Building or illegally trespassed on its grounds on January 6, 2021. The defendant returned to the block where his pickup truck was parked at around 6:30 p.m. as a passenger in a different car, and he approached law enforcement to state that he was trying to get to his red pickup truck. (Dkt No. 1-1 at 2.) The driver of the car reported to law enforcement that she did not know the defendant, but had spent part of the day with him because (a) it was cold out, (b) the defendant had said that he could not get to his own vehicle, and (c) she felt sorry for him. The driver reported that she had also been unable to get to her car earlier that day because it was parked in the area of First Street and New Jersey Avenue, S.E., an area that had been closed off to the public by law enforcement. The driver reported that she and the defendant took the metro to Pentagon City where they ate pizza, bought a phone charger, and warmed themselves. After returning to D.C. by metro, the driver was able to access her car. She reported that she allowed the defendant to sit in her car to warm up, and that while doing so the defendant pointed out that law enforcement officers were looking at his pickup truck. The driver said that she was unaware the defendant had weapons on his person or in his pickup truck. (Interview summary attached as Exhibit G.)

three criminal charges, which should be served concurrent to each other, to be followed by a three-year term of supervised release.

### I. Statutory Penalties

The statutory maximum penalty for a violation of 26 U.S.C. § 5861(d) (Possession of an Unregistered Firearm – Destructive Device) is 10 years of imprisonment pursuant to 26 U.S.C. § 5871; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571; a term of supervised release of three years, pursuant to 18 U.S.C. § 3583(b)(2); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

The statutory maximum penalty for a violation of 22 D.C. Code § 4504(a)(1) (Carrying a Pistol Without a License) is five years of imprisonment and a fine of $12,500, pursuant to 22 D.C. Code §§ 4504(a)(1) and 3571.01; and a term of supervised release of three years, pursuant to 22 D.C. Code § 403.01.

### II. Application of the Sentencing Guidelines

The Sentencing Guidelines provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), a criminal defendant for violations of the United States Code. As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" in determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

**Possession of an Unregistered Firearm – Destructive Device**

The parties agreed at the plea hearing that the following Sentencing Guidelines provisions apply to the violations of 26 U.S.C. § 5861(d). First, the base offense level under U.S.S.G. §

2K2.1(a) (unlawful possession of firearms) is 18. Second, four points should be added under U.S.S.G. § 2K2.1(b)(1) because the offenses involved 8-24 firearms. Third, two points should be added under U.S.S.G. § 2K2.1(b)(3)(B) because the offenses involved a destructive device. Three points should be deducted for acceptance of responsibility under U.S.S.G. § 3E1.1 for acceptance of responsibility. This results in a total Estimated Offense Level of 21.[6] The parties agreed at the plea hearing that the defendant has no prior criminal convictions and an estimated Criminal History Category of I. The parties consequently agreed at the plea hearing that the Estimated Guidelines Range is 37 – 46 months of imprisonment, and that the estimated applicable fine range is $15,000 to $150,000.[7] (Dkt No. 22, Case No. 1:21-cr-4; Signed Plea Agreement in Case No. 1:21-cr-614, attached as Exhibit H.)

---

[6] The Final Presentence Report indicates that the two violations of 26 U.S.C. § 5861(d) should be grouped together as "closely related counts" under U.S.S.G. § 3D1.2(d), despite that the offenses were charged in two separate criminal cases (Case Nos. 1:21-cr-4 and 1:21-cr-614) and involved offenses committed on different dates and in different jurisdictions. Under this reasoning, six points (rather than four) would be added under U.S.S.G. § 2K2.1(b)(1)(C) because the grouped offenses from the two criminal cases involved more than 25 combined firearms. The Final Presentence Report consequently concludes that the Total Offense Level is 23, and that the Guidelines Imprisonment Range is 46-57 months.

[7] The parties agreed in the plea agreement and at the plea hearing that, for the purpose of calculating the applicable ranges under the sentencing guidelines, neither a downward nor upward departure from the guidelines range would be warranted (with the exception that the United States reserved the right to seek an upward departure under U.S.S.G. § 3A1.4, n.4). (Dkt No. 22 at 4, Case No. 1:21-cr-4; Exhibit H at 4.) The Final Presentence Report proposes that under U.S.S.G. § 5K2.14, the Court may impose an upward departure if national security, public health, or safety was significantly endangered. Consistent with its obligations under the plea agreement, the United States does not take the position that the upward departure would be appropriate in the unique circumstances of this case, which include that the defendant did not make specific threats to use the weapons or otherwise evidence a specific intent to use them, and where the Molotov cocktail incendiary devices were not fully assembled. *Cf. United States v. Calloway*, 2021 WL 3188399, at 3 (D.D.C. July 28, 2021) (departing upward under U.S.S.G. § 5K2.14 because the defendant intended to use an AK-47 and other weapons to perpetuate a "slaughter" that could have killed multiple individuals); *United States v. Loveday*, 922 F.2d 1411 (9th Cir. 1991) (departing upward under U.S.S.G. § 5K2.14 because the defendant manufactured multiple pipe bombs containing lethal components, which posed a unique danger to public safety, and the defendant possessed a handwritten "how-to" manual to assemble pipe bombs); *United States v. Dempsey*, 957 F.2d 831 (11th Cir. 1992) (affirming application of upward departure for defendant who possessed homemade pipe bombs and homemade hand grenade, citing the "indiscriminate and uniquely dangerous propensity of pipe bombs and grenades"); *United States v. Stumpf*, 938 F.2d 172, 174 (10th Cir. 1991) (upward departure justified where defendant assembled trip-wire pipe bombs and exercised a leadership role in an effort to sell the weapons to an illegal paramilitary organization); *United States v. Joel Malek*, 1:20-cr-292 (N.D.N.Y. October 26, 2021) (no upward departure for defendant who pleaded guilty to possessing a Molotov cocktail, and who, during a period of civil unrest in summer 2020, broke the window of a car and ignited the incendiary device inside the car, starting a fire and causing

**Carrying a Pistol Without a License**

The parties agreed at the plea hearing that a violation of 22 D.C. Code § 4504(a)(1) is classified under the D.C. Sentencing Guidelines in Offense Severity Group M8. See D.C. Sentencing Guidelines, Appendix C at C-5 and Appendix A. The defendant has no Criminal History Points under the D.C. Sentencing Guidelines and has a criminal history score of "A." Id. at Appendix A – Master Grid. The parties agreed that the Estimated Sentencing Guideline Range under the D.C. Sentencing Guidelines is 6-24 months of imprisonment, with probation permissible. Id. The court may (1) suspend the imposition of sentence, (2) impose sentence and suspend the execution thereof, or (3) impose sentence and suspend the execution of a portion of the sentence. See 16 D.C. Code § 710.

### III.  Statutory Sentencing Factors

The Court should next consider each of the applicable sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Gall*, 552 U.S. 38, 49-50. Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The § 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

---

an explosion).

1.  **Nature and Circumstances of the Offenses**

The defendant committed serious federal criminal offenses by unlawfully possessing the component parts to make Molotov cocktail incendiary devices, in both Washington, D.C., and in Alabama, and he violated the laws of the District of Columbia by possessing numerous additional firearms and ammunition, and by carrying firearms on his person. The combination of gasoline and Styrofoam in the mason jars made for a particularly dangerous incendiary weapon. The substantial collection of weapons also included large-capacity ammunition feeding devices, a crossbow with bolts, machetes, camouflage smoke devices, and a stun gun. The defendant endangered the community through his conduct; he transported the weapons across state lines, and left them unsecured in his pickup truck, which was parked in a part of Washington, D.C., close to residences and government buildings including the U.S. Capitol Building. *See, e.g., United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991) ("The weapons listed in 26 U.S.C. § 5845 are particularly dangerous."); *United States v. Posnjak*, 457 F.2d 1110, 1115 (2nd Cir. 1972) ("Congressional concern, when it passed these statutes [i.e. the National Firearms Act] was to halt the growing number of crimes in which guns were used to inflict or threaten bodily harm. Congress found it a matter of national concern to make firearms less readily available to juveniles, criminals, addicts, mental defectives, armed groups who would supplant public authorities, and others considered likely to put them to illegitimate uses.").

The defendant unlawfully possessed these weapons concurrent with his intended participation at a political rally near the National Mall, and shortly after he had made efforts to meet with a United States Senator to "help with the election fraud he saw." (Dkt. No. 19 at 6, Case No. 1:21-cr-4). January 6, 2021, was a time of heightened intensity in our national politics, as the

10

United States Congress convened to count the votes of the Electoral College. Throughout the day, as the United States Capitol Building was assaulted by others and a curfew was declared, the defendant had a large stockpile of weapons and the component parts for incendiary devices just a few blocks away, and he was traveling the area with loaded firearms on his person.

### 2. History and Characteristics of the Offender

The defendant is a 72-year-old citizen of the United States with no prior arrests and no criminal convictions. As a young man, he enlisted in the United States Army and served in the Vietnam War. He received a GED while serving in the military. The defendant had a 29-year history of employment and was retired at the time of the offense conduct. He appears to have had strong family ties throughout his life, but became estranged from close family members in recent years, concurrent with the time-frame of his deeply concerning militia-related activity. The defendant was identified by law enforcement as a participant at a gathering of militia groups in Texas, where he was armed with a shotgun and a 9mm pistol. The defendant possessed militia-related information in January 2021, including contact information for an individual identified by law enforcement as a member of a Southeast, Texas, militia group. The defendant did the right thing by accepting responsibility for his conduct by pleading guilty.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

The sentence should send a message to the defendant and the public that unlawful possession of weapons, including homemade incendiary devices like Molotov cocktails, will not be tolerated. Possession of such dangerous weapons in the Nation's Capitol is uniquely offensive to our cherished democratic political traditions. The sentence must also adequately punish the defendant for his offenses and protect the public from future misconduct. In the unique

circumstances of this case, a term of imprisonment at the mid-point of the agreed-upon Sentencing Guidelines range will accomplish these sentencing goals. Additionally, the imposition of a three-year term of supervised release will provide additional deterrence and protection to the public after the defendant's release.

### 4. Educational or Vocational Training or Medical Care

A three-year term of supervised release should require that the defendant participate in mental health evaluation and treatment, which will serve core sentencing goals and help ensure successful reentry.

### 5. Need to Avoid Unwarranted Sentencing Disparities

The proposed sentence is within the Sentencing Guidelines range, and will ensure that the defendant is not subject to an unfairly disparate sentence. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007) (internal quotation marks omitted); *Gall*, 552 U.S. at 46 (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). A sentence within the guidelines range will promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007). *See also*, *United States v. Kostich*, 197 F. App'x 753, 755 (10th Cir. 2006) (affirming judgment imposing a guidelines sentence for possession of an incendiary device); *United States v. Johnson*, 39 F.3d 1182 (6th Cir. (imposing a Guideline sentence followed by three years of supervision for illegally making and

possessing a Molotov cocktail in connection with an aborted firebombing attempt at the home of the Johnson's former superior).

## V.     Conclusion

For these reasons, and considering all the unique circumstances of this case, we respectfully suggest that the Court impose a term of imprisonment at the mid-point of the agreed-upon Sentencing Guidelines range, followed by three years of supervised release with conditions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:       /MJF/
Michael J. Friedman
N.Y. Bar 4297461
Assistant U.S. Attorney
United States Attorney's Office
555 Fourth St., NW
Washington, D.C. 20001
202-252-6765
Michael.Friedman@usdoj.gov